*610 TEXTO COMPLETO DE LA SENTENCIA
Se apela de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan el 3 de marzo de 1997. Mediante la referida sentencia el tribunal desestimó, sin perjuicio, la demanda presentada en el caso de epígrafe. Por los fundamentos que pasamos a exponer, revocamos la sentencia desestimatoria y devolvemos el caso a instancia para la continuación de los procedimientos.
El 21 de junio de 1996 la Iglesia de Dios Pentecostal, Movimiento Internacional de la Carretera Núm. 21, su Junta de Directores y su Pastor, Moisés Román, presentaron ante el tribunal una demanda contra el señor Pedro Torres Velázquez y la Sociedad Legal de Bienes Gananciales compuesta por él y su esposa Doris Reyes Delgado.
La Iglesia de Dios Pentecostal Movimiento Internacional Carretera Núm. 21 (en adelante "Iglesia demandante") es una iglesia congregacional afiliada a la corporación Iglesia de Dios Pentecostal Movimiento Internacional, Inc., Región de Puerto Rico (en adelante "Corporación"). El demandado, Pedro Torres Velázquez, es el Presidente de la Corporación. En síntesis, se alega que el Presidente de la Corporación, actuando ultra vires como Presidente, ha pretendido confiscar bienes muebles e inmuebles propiedad de la Iglesia demandante mediante un curso de conducta crasamente arbitrario, colusorio y o fraudulento. La demanda solicita que se dicte sentencia declaratoria dirigida a esclarecer la controversia con relación a la pretendida confiscación de bienes; que se diriman los derechos seculares de las partes conforme al Reglamento que gobierna los procedimientos de la Iglesia de Dios Pentecostal Movimiento Internacional, en su fase de corporación inscrita ante el Departamento de Estado, y de la congregación demandante como entidad jurídica no incorporada, separada y distinta de la corporación a la que se afilió luego de organizada y constituida; que se dicte un interdicto dirigido al demandado para que cese y desista de pretender continuar confiscando los bienes muebles e inmuebles pertenecientes a la parte demandante; así como que se dicte una sentencia en daños y perjuicios por concepto de los sufrimientos y angustias mentales que las actuaciones ultra vires del demandado han ocasionado a la Iglesia demandante, a sus directores y a su pastor.
El 20 de agosto de 1996 la parte demandada solicitó se desestimara la acción incoada. Sostuvo dicha parte que el tribunal debía desestimar el pleito porque había falta de capacidad jurídica para demandar, falta de acumulación de parte indispensable, y falta de jurisdicción constitucional sobre la materia, bajo la doctrina de separación de Iglesia y Estado, porque la controversia entre las partes era una de naturaleza estrictamente eclesiástica.
La parte demandante, considerando la moción de desestimación como una solicitud de sentencia sumaria de los demandados, sostuvo la improcedencia de la disposición sumaria dados los hechos y el derecho en controversia. Sostuvo, en esencia, que el Reglamento de la Iglesia de Dios Pentecostal-Movimiento Internacional, Región de Puerto Rico (en adelante "Reglamento"), le confería plena capacidad a las congregaciones locales para organizarse conforme a su propio reglamento y para establecer su propia administración interna. Además, les reconocía el derecho de propiedad y el dominio y posesión de sus bienes, por lo que la capacidad jurídica para demandar estaba claramente establecida. Argumentó que la demanda sólo trataba de dilucidar a cuál entidad correspondían determinados títulos de propiedades, y que ésta era una controversia puramente secular de disposición de propiedades, que requería se interpretara un contrato y se consideraran elementos subjetivos, como la intención de las partes contratantes, lo que en absoluto afectaba la teología o el culto pentecostal. Se adujo que la iglesia demandante se fundó como una iglesia independiente, que compró los bienes y muebles en litigio antes de afiliarse a la Corporación que presidía el demandado, y que se afilió libremente a dicha confederación de iglesias congregacionales bajo la representación contractual de que los bienes que le pertenecían le seguirían perteneciendo.
Se sostuvo que en el caso no se controvertía el derecho que pudiera tener la parte demandada de expulsarlo de la Corporación por motivos religiosos o teológicos. Se trataba sólo, afirmaron los demandantes, de una congregación que tenía unas propiedades, que había decidido desafiliarse de una. denominación incorporada y que única y exclusivamente pedia la segregación de las propiedades que le pertenecían y la reparación de los daños y perjuicios causados.
*611 La Oposición a la solicitud de sentencia sumaria fue acompañada por dos declaraciones juradas donde se exponían los siguientes hechos materiales: que un núcleo de feligreses y liderato se había desafiliado de la Corporación en el año 1983; que al momento de la desafiliación, la congregación que se independizó hizo una reclamación a la Corporación por concepto de propiedad adquirida por la congregación; que a base de un criterio de proporcionalidad la Corporación los indemnizó con alrededor de $40,000.00; que se organizó una iglesia congregacional bajo el nombre de Iglesia de Dios Pentecostal Misionera, totalmente independiente de la Corporación y de las iglesias afiliadas al Movimiento Pentecostal-MI, Región de Puerto Rico; que producto del esfuerzo exclusivo de la congregación independiente se habían levantado $84,402.15 durante el primera año; que la congregación independiente fue haciendo las provisiones para la adquisición de unos terrenos en la Carretera Núm. 21 para ubicar su templo; que los trámites para negociar los términos de la compraventa y financiar la adquisición de los terrenos donde posteriormente se ubicó el templo de la iglesia en la Carretera Núm. 21 fueron realizados por la Junta de Directores de la iglesia congregacional independiente sin participación alguna del Concilio de la Iglesia de Dios Pentecostal-Movimiento Internacional, Inc., Región de Puerto Rico; que se concretó la compra de una propiedad inmueble en la Carretera Núm. 21 por valor de $200,000.00; que la Corporación, presidida entonces por el señor Pedro Martínez Lugo, inició acercamientos para que la congregación independiente se reafiliara a la Región de Puerto Rico organizada a nivel corporativo; que durante el proceso de negociación para la reafiliación de la iglesia de la Carretera Núm. 21 se negoció expresamente que se respetaría la identidad independiente de dicho grupo como iglesia congregacional y que se reconocería la identidad independiente de la iglesia; que el señor Pedro Martínez Lugo, Presidente del Concilio, compareció a la firma de las escrituras en su capacidad representativa tal y como establecía el Reglamento, pero que ello en manera alguna representó una transferencia de la propiedad adquirida por el esfuerzo e iniciativa de la congregación local a la iglesia central; que posteriormente e construyó el templo y se compraron bienes muebles todo ello sufragado con fondos de la congregación local; que el bien inmueble solamente adeudaba $40,000.00, más los correspondientes intereses habiéndose hecho todos los pagos bajo el pastorado del Pastor Román.
La parte demandada replicó la oposición a la solicitud de sentencia de sumaria. Reiteró sus fundamentos de desestimación y afirmó que la interpretación del Reglamento le correspondía a la autoridad máxima de la iglesia y que una vez así la iglesia lo hiciera, el tribunal le debía gran deferencia a lo por ella interpretado. Señaló dicha parte que como parte de los trabajos de una Asamblea Extraordinaria celebrada el 7 de septiembre de 1996, se había acordado designar un Comité de Diálogo de la organización para entender en la controversia y que dicho Comité de Diálogo ya había sido nombrado por la Junta de Oficiales de la Corporación.
Luego de una dúplica de la parte demandante, el tribunal de instancia dictó sentencia el 3 de marzo de 1997 sumariamente desestimando, sin perjuicio, la demanda presentada. La desestimación se hizo extensiva a la reclamación por concepto de daños y perjuicios, advirtiéndose a la parte demandante que podría presentar dicha reclamación por la vía civil ordinaria, luego que se acumularan todas las partes que fueran indispensables para que el tribunal en su día pudiera conceder los remedios interesados.
El tribunal concluyó, en primera instancia, que no le estaba vedada la controversia planteada por razón de las cláusulas constitucionales sobre la separación de Iglesia y Estado. Afirmó que la solicitud de la parte demandante requería únicamente que se determinara a quién pertenecían ciertos bienes muebles e inmuebles. Describiendo la disputa sobre derecho de propiedad como una de índole secular y terrenal —para lo cual el tribunal no tenía que pasar juicio sobre las doctrinas, las disciplinas de fe o de organización interna de la iglesia pentecostal— resolvió que era inaplicable al caso la doctrina de abstención judicial invocada por la parte demandada.
No obstante lo anterior, el tribunal desestimó la demanda bajo el convencimiento de que la parte demandante venía obligada a agotar el remedio de naturaleza contractual pactado por las partes para resolver controversias entre sí, antes de acudir al foro judicial. Expuso el tribunal que la Junta de Oficiales de la Corporación había establecido un Comité de Diálogo a fin de llegar a algún tipo de acuerdo en relación con las propiedades en disputa y que el pastor demandante había indicado que estaba dispuesto a reunirse con el Comité de Diálogo para tratar de resolver las diferencias surgidas entre las partes. Invocando, por un lado, la norma jurídica de que una parte que ha pactado con otra un *612 determinado procedimiento para dilucidar las controversias surgidas entre ambas viene obligada a agotar dicho procedimiento antes de acudir a los tribunales y reiterando, por otro lado, que en Puerto Rico existe como cuestión de política pública un interés en promover las cláusulas contractuales que las partes escogen como vehículo para resolver sus disputas, el tribunal determinó que los asuntos de naturaleza secular como eran la tenencia de bienes debían atenderse, en primera instancia, a través de los conductos internos que proveía la iglesia. Haciendo referencia al Artículo V, Inciso 9 del Reglamento, que reconocía a la Junta de Oficiales la facultad inicial de resolver las querellas entre pastores, iglesias y juntas locales, determinó que la parte demandante venía obligada a agotar el remedio provisto en el Reglamento antes de acudir al tribunal, por razón de que el referido Reglamento constituía un acuerdo o contrato sui generis que vinculaba a las partes que integraban la Corporación.
La parte demandante solicitó reconsideración parcial de la sentencia. Señaló estar conforme con aquella parte de la decisión que resolvía que la disputa entre las partes era una de naturaleza propietaria y que el tribunal tenía jurisdicción para disponer a quién pertenecían las propiedades en disputa mediante el mecanismo secular de adjudicación judicial. No obstante, inconforme con la parte de la sentencia que desviaba la controversia a un foro extrajudicial solicitó que el tribunal reconsiderara tal dictamen. La moción de reconsideración parcial fue acompañada de una declaración jurada tomada al demandante Pastor Román el 18 de marzo de 1997. En la declaración jurada el Pastor Román relató las incidencias de una asamblea de las congregaciones afiliadas a la Corporación celebrada en marzo de 1997 bajo la presidencia del demandado. Adujo el Pastor Román que en la referida asamblea se disolvió el Comité de Diálogo designado mediante resolución el 7 de septiembre de 1996 y se designó un nuevo comité al que se le retiró específicamente la capacidad de llegar a acuerdos con relación a la disposición de propiedades y cuya composición no era apta para un comité de diálogo por ser sus miembros parte activa en la controversia propietaria y responder expresamente a los intereses del presidente de la Corporación.
La parte demandada se opuso a la solicitud de reconsideración parcial. Sostuvo que el procedimiento extrajudicial para que las partes dilucidaran las controversias estaba disponible y que se habían designado a cinco miembros para estar a cargo de las conversaciones. Intimó que cualquier objeción de la parte demandante al Comité nombrado debía hacerse en el foro interno. Por otro lado, los demandados consignaron que los méritos del caso en cuanto a la naturaleza puramente eclesiástica de la controversia y a la falta de jurisdicción del tribunal no habían sido adjudicados. De entenderse lo contrario, afirmaron los demandados en su moción, debía entenderse que solicitaban la reconsideración de la sentencia por no proceder la misma conforme a derecho ni mucho menos proceder mediante la emisión de una sentencia sumaria. 
Luego que la moción de reconsideración parcial de la parte demandante fuera denegada el 21 de marzo de 1997, dicha parte acudió en apelación a este foro a plantear la comisión de los siguientes errores:

"Erró el Tribunal de Primera Instancia al desestimar la Petición y Demanda no obstante haber determinado que la controversia respecto a las propiedades en disputa es secular y por tanto susceptible de adjudicación judicial.

Erró el Honorable Tribunal al no proveer un remedio cónsono con sus determinaciones de hecho y de derecho so color de referir la controversia a un "Comité de Diálogo" no acordado entre las partes.

Erró el Honorable Tribunal al no considerar la evidencia incontrovertida ante si, de que no existe confianza ni posibilidades de acuerdo extrajudicial entre las partes.

Erró el Honorable Tribunal al dejar desprovisto a los demandantes de sus remedios constitucionales y estatutarios al pleno disfrute de sus propiedades."

La parte apelada presentó su alegato. Posteriormente, la Iglesia demandante-apelante sometió una moción a la que adjuntó una declaración jurada relatando hechos ocurridos luego de presentado el recurso apelativo. Los demandados-apelados se oponen a que consideremos la moción. Así las cosas procedemos a resolver.
*613 II
En el pleito, los demandantes hacen numerosas alegaciones. En esencia, se aduce que la Iglesia demandante es una congregación independiente, con propiedades, cuya afiliación a la iglesia que preside el demandado estuvo precedida de un proceso de negociación sobre la base de que la Iglesia demandante era dueña de sus propiedades y que éstas le seguirían siendo reconocidas aún después de la afiliación a la región. Según las alegaciones de la parte demandante, durante el proceso de afiliación a la Iglesia que preside el demandado, se discutió extensamente la identidad independiente de la Iglesia demandante y nunca se acordó que las propiedades adquiridas por el esfuerzo e iniciativa de la Iglesia demandante fueran transferidas de dicha congregación a la iglesia central que preside el demandado.
La parte demandada, por su parte, argumenta que se trata de una controversia en que los demandantes carecen de legitimación activa. Aún teniéndola, arguyen los demandados, los tribunales no están facultados a intervenir porque se trata de la interpretación de la Constitución y el Reglamento intemo de una organización eclesiástica. La materia, sostienen los demandados, no es susceptible de interpretación judicial porque ello tendría un efecto sumamente pequdicial a la práctica de la religión de esa entidad religiosa, y por consiguiente, sería una violación del Estado de la Cláusula Constitucional de Libertad de Culto.
Veamos. La cuestión básica a resolver en este caso es a quién debe adjudicarse la pertenencia de ciertos bienes. Los tribunales civiles no pueden ejercitar su jurisdicción para dilucidar disputas sobre derecho de propiedad relativos a una iglesia cuando tengan irremediablemente que pasar juicio sobre materias de doctrina, de disciplina, de fe o de organización eclesiástica intema. Díaz v. Colegio Nuestra Sra. del Pilar, 123 D.P.R. 765 (1989). No obstante, el mero hecho que una iglesia esté involucrada en una disputa de pertenencia de bienes no es suficiente para activar la norma de abstención judicial. Ello conllevaría convertir a las iglesias en zonas de dominio absoluto con potestad exclusiva para dirimir todo tipo de conflicto sobre derechos propietarios.
En la etapa en que se encuentra este caso, donde no se ha contestado la demanda, nada hay que nos demuestre que el ejercicio de jurisdicción judicial constituya per se una violación de la cláusula de libertad de culto. Se alega por los demandantes que previo a la afiliación de la Iglesia demandante a la Corporación que preside el demandado, y previo a que la Constitución y el Reglamento de la Corporación rigieran la relación entre la Iglesia demandante y la Corporación, se llevaron a cabo unas negociaciones entre ambas partes, que alegadamente condujeron a unos acuerdos sobre las propiedades objeto de la demanda. La parte demandante específicamente alega que se afilió libremente a dicha confederación de iglesias congregacionales bajo la representación contractual de que sus bienes seguirían bajo su dominio y titularidad.
Planteado ante el tribunal están las representaciones contractuales de cada parte en ese momento. En el caso de autos lo que se requiere es la interpretación del convenio entre las partes al momento de afiliarse la Iglesia demandante a la Corporación, considerando elementos subjetivos como la intención de las partes contratantes. No acertamos a ver, a base del desarrollo del pleito hasta este momento, cómo el dilucidar las representaciones contractuales que la parte demandante alega se le hicieron para que se afiliara, incide en las doctrinas, las disciplinas de fe o la organización interna de la iglesia pentecostal.
Lo cierto es que el tribunal de instancia entendió que la controversia planteada no le estaba vedada. No obstante, entendió que las partes habían pactado un determinado procedimiento para dilucidar las controversias surgidas entre ambas y en consecuencia la parte demandante venía obligada a agotar dicho procedimiento antes de acudir a los tribunales. Haciendo alusión al Artículo V, Inciso 9 del Reglamento, que reconoce a la Junta de Oficiales de la Corporación la facultad inicial de "resolver querellas entre pastores, iglesias y juntas locales que afecten las buenas relaciones de la congregación", el tribunal decidió que los asuntos de naturaleza secular como eran la tenencia de bienes debían de atenderse, en primera instancia, a través de los conductos internos que proveía la iglesia, en este caso el Comité de Diálogo nombrado.
Entendemos, como bien señala la ilustrada sala sentenciadora, que el Reglamento de la *614 organización regional no establece un mecanismo para adjudicar controversias sobre titularidad de bienes muebles e inmuebles. Tampoco hay en el Reglamento nada que contemple o haga compulsorio el agotamiento de remedios antes de acudir a los tribunales. Apreciamos, además, que la cláusula del Reglamento que reconoce que la Junta de Oficiales está facultada para resolver las querellas entre pastores, iglesias y juntas locales no puede interpretarse como que tiene el alcance de obligar a la parte aquí demandante a agotar dicho remedio y a someter su controversia a la "jurisdicción" de la Junta de Oficiales. El demandado Torres Velázquez es el Presidente de la Junta de Oficiales y, por lo tanto, sería juez y parte en la controversia. De igual forma, tampoco puede entenderse que el "Comité de Diálogo" nombrado constituye una "cláusula contractual" que hace necesario aplicar la doctrina de agotamiento de remedios contractuales. El Reglamento no contempla mecanismo alguno de agotamiento de remedios en casos en que el Presidente o la Junta de Oficiales de la Corporación sean parte de la controversia.
Lo que ocurre en el presente caso es que, posterior a presentarse la demanda, se nombró un Comité de Diálogo para negociar un acuerdo entre las partes. Se trata de un mecanismo conciliador que en forma alguna supedita la jurisdicción del tribunal. No existe un acuerdo contractual de sumisión de controversias a un mecanismo extrajudicial de solución de disputas. En consecuencia, el tribunal no puede aplicar la doctrina de agotamiento de remedios, pues no procede.
Por lo antes expuesto, se deja sin efecto la sentencia desestimatoria y se devuelve el caso para la continuación de los procedimientos.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General